# WITNESS' AFFIDAVIT

I, (name) Gary T. Svetlik

am an employee of the U. S. Department of Agriculture:

(Agency) Animal and Plant Health Inspection Service

(Office) Veterinary Services

(Division) Western Region

(Branch)

Located in (city and state) Georgetown, Texas

In the capacity of (show your organization title and the classification of your job, if different):

Veterinary Medical Officer

Grade GS-12 between (date) 1976 and (date) present

My telephone number during working hours is: 512-863-8186 – home/office, 512-657-0079- cell

I HAVE BEEN ADVISED OF THE FOLLOWING:

I am required by Federal regulations and Department of Agriculture policy to cooperate fully and promptly with the investigator who has been assigned to conduct a thorough and impartial investigation into a complaint of discrimination against the Department of Agriculture. I must provide a statement for the investigative report which is true and complete to the best of my knowledge and which discloses all of my firsthand knowledge having a bearing on the merits of the complaint. My statement is provided under oath (or affirmation), without a pledge of confidentiality, in accordance with Equal Employment Opportunity Commission rules and regulations and Department of Agriculture policy. This means that any employee(s) whom I accuse of discrimination or other acts of impropriety may be shown relevant portions of my affidavit and be provided an opportunity to respond for the record. In addition, the complainant and the appropriate Departmental officials involved in the EEO complaint process will receive the entire investigative file. I have the right to review my statement prior to signing it and may make initialized corrections if it is incomplete or inaccurate, I have the right to receive a copy of the signed statement.

Having been advised of the above information about my role as a witness in the investigative process, I solemnly swear the statement which follows is true and complete to the best of my knowledge and belief, and addresses the issues and concerns raised with me by the investigator.

**TESTIMONY**

My official duty station has been Texas throughout my APHIS employment. Dr. John Westover applied for a position in Texas around 1988 or 1989. I interviewed Dr. John Westover for a

training position in the Public Veterinary Practice Career (PVPC) program in about 1988 or 1989. He was offered a training position located in another state but refused to accept it because he did not want to move to the duty location as described in the job announcement. I think someone who wants to work in an organization should do what the organization needs him to do and not start off by requesting changes to the program, as Dr. Westover did on that occasion.

Dr. Roxanne Mullaney and I both worked on the Safeguarding Review to develop action plans to address deficiencies identified by the review, during a phone conversation discussing Safeguarding issues she mentioned that she had received an application from a former Texas VS employee for a vacancy announcement in NY. I told her that Dr. Westover had worked in Texas a number of years ago as a Tuberculosis epidemiologist in El Paso, TX. I told her that from what I saw and heard my personal opinion was that his performance was not adequate and I would not hire him for any position. I based this opinion on information I had gained when I was detailed to the El Paso, TX area to assist with the tuberculosis testing of the large dairy herds in the area in which Dr. Westover worked and my initial impression after he refused the training assignment. While assisting with the testing I would visit with producers in the area who told me that Dr. Westover's responsiveness to their needs and performance in their opinion was not adequate. I also saw him on a producers' premises while testing cattle on one occasion and though that he could have done a lot better job than he was doing without exerting a whole lot of effort.

I do not know why Dr. Westover left APHIS. I heard second- or third-hand, that he quit coming to work and management had initiated disciplinary action on him, but he was allowed to quit with the promise that he would not apply for any APHIS jobs. But it is my understanding that he has been applying for other APHIS positions.

I do not know if Dr. Westover had filed any EEO complaints over his APHIS employment, but I heard that he did. Since I was not sure whether or not Dr. Westover filed any EEO complaints I doubt that I would have mentioned this to Dr. Mullaney. I mentioned it to the investigator because she asked the question.

I have reviewed this statement, which consists of 2 pages, and hereby solemnly swear that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

Gary Sketlif [signature] 9-13-05
(Signature of Deponent) (Date)

Signed before me at (Street and City) 2550 FM 971, GEORGETOWN, TX 78626
on this 13 day of SEPTEMBER, 20 05

[signature]
(Signature of Witness)

# WITNESS' AFFIDAVIT

I, (name) Roxanne C. Mullaney

am an X employee of ____ applicant to ____ former employee of the U. S. Department of Agriculture:

(Agency) Animal and Plant Health Inspection Service

(Office) Veterinary Services

(Division) Eastern Region

(Branch) Area of New York

Located in (city and state) Albany, New York

In the capacity of (show your organization title and the classification of your job, if different):
Area Veterinarian in Charge

Grade GS-14 between (date) January 2002 and (date) present

My telephone number during working hours is: 518-869-9007

I HAVE BEEN ADVISED OF THE FOLLOWING:

I am required by Federal regulations and Department of Agriculture policy to cooperate fully and promptly with the investigator who has been assigned to conduct a thorough and impartial investigation into a complaint of discrimination against the Department of Agriculture. I must provide a statement for the investigative report which is true and complete to the best of my knowledge and which discloses all of my firsthand knowledge having a bearing on the merits of the complaint. My statement is provided under oath (or affirmation), without a pledge of confidentiality, in accordance with Equal Employment Opportunity Commission rules and regulations and Department of Agriculture policy. This means that any employee(s) whom I accuse of discrimination or other acts of impropriety may be shown relevant portions of my affidavit and be provided an opportunity to respond for the record. In addition, the complainant and the appropriate Departmental officials involved in the EEO complaint process will receive the entire investigative file. I have the right to review my statement prior to signing it and may make initialized corrections if it is incomplete or inaccurate, I have the right to receive a copy of the signed statement.

Having been advised of the above information about my role as a witness in the investigative process, I solemnly swear x affirm ____ the statement which follows is true and complete to the best of my knowledge and belief, and addresses the issues and concerns raised with me by the investigator.

**TESTIMONY**

 Initials [illegible]

I have been with Animal and Plant Health Inspection Service (APHIS) and the Department of Agriculture since 1991. Prior to coming to New York, I worked for APHIS in Michigan and New Jersey. My current first-line supervisor is Dr. Ulysses Lane, Assistant regional Director, Eastern region, Veterinary Services. I have never personally engaged in protected EEO activity like contacting a counselor or filing a complaint about employment discrimination. I do not know if Dr. John Westover ever engaged in such protected EEO activity prior to this complaint.

When Dr. Westover worked for APHIS, I did not know him. I think the first time I saw his name was on an application he filed for a position in New York. The investigator informed me Dr. Westover worked for APHIS from early 1992 to June 1995. Other than what was on his application for the position, I know nothing at all about Dr. Westover's APHIS employment. I think I saw on his application that he worked as a veterinarian in Texas, but I really do not recall any specifics. I have no idea why Dr. Westover left APHIS.

The APHIS Veterinary Services Career Program Office is coordinated in Riverdale, Maryland. When we have a vacant veterinarian position, the job is advertised; Riverdale reviews the applications and sends me a list of names of candidates scheduled for interviews. They also send me the applications of those candidates on the list. Dr. Westover's name came to me on a list for the vacancy in Western New York that we advertised under announcement number 2487-2004-0132. No one in Riverdale talked to me about his application. His application was just one of the group of applications Riverdale sent to me for consideration.

Ms. Eileen Cramer coordinated the selection process in Riverdale. The interview for candidates for the Veterinarian Services Career Program is a Behavioral Event Interview conducted in Riverdale, MD. I believe in this case, Ms. Cramer selected the interview panel. I sometimes recommend people who are interested in serving on an interview panel, but I do not think I recommended anyone for this panel. Not a lot of people are interested in being on the panels. In this case, three APHIS employees traveled to Riverdale for the interview and I participated by telephone on a speaker phone. I am offered the option of going to Riverdale for the interviews but I prefer to participate by telephone to save the time of going down there for a few relatively brief interviews. I believe my Assistant Area Veterinarian in Charge, Dr. David Smith, also participated in the interviews for this position by speakerphone. Dr. Smith is the supervisor of the position in Western New York that we were trying to fill. I do not remember the names of the three employees who participated in Riverdale.

Dr. Westover's interview was very good. I was impressed. At this point, I do not remember specifics of what he said, but he was very knowledgeable and well-spoken. He seemed to have a good grasp of APHIS programs.

According to the Veterinary Services Career Program rules, once the interviews are completed, I am not allowed to discuss the interviews with the panel members in Riverdale. The Riverdale staff sends me the panel's interview notes and their rating of each of the applicants on various competencies. In this case, I believe there were three applicants that I received the panel results for. One was rated lower than the others by the panel and was not available to me for selection because he was on the same list as Dr. Westover. Dr. Westover is a veteran and I cannot select anyone below him on the list. Another was Dr. Laura Wright, who as I recall was not on the same list as Dr. Westover. I think she applied for the GS-9 level and Dr. Westover applied at the higher grades, as well he should because of his prior experience. The third candidate was Dr. Westover. Dr. Smith and I then began checking references on the two remaining candidates from which I could select: Dr. Westover and Dr. Wright. I did not check the references on the third candidate because he was not available to me for selection.

 Initials ____

Candidates give us references with their application or they are asked to provide references after the interview process. Either Dr. Smith or I called the references Dr. Wright provided and her references were what I would call so-so. Nothing particularly good or bad. Just mediocre. The reference Dr. Westover provided for his previous APHIS employment was Ms. Rene Wing from Ft. Collins, Colorado. I called Ms. Wing and she provided a neutral reference on Dr. Westover. She really didn't say much, just that he had worked for APHIS and the dates he worked for APHIS. She may have said where he worked when he was with APHIS. I had the sense that she was reading from something as she gave the reference. Ms. Wing did not give me any information to validate that Dr. Westover would be a good candidate for the position. This was a big contrast to Dr. Westover's interview, which was great. Ms. Wing was apparently not allowed to say anything more than the few facts she gave me. I do not remember if Ms. Wing told me or I just got the impression that others in APHIS would also be limited in what they could say. I did not pursue any other references on Dr. Westover because of the neutral, guarded reference Ms. Wing gave me on him. When you hear something like that, you wonder what happened.

Once we check the references, we recommend to Ms. Cramer the candidate we think should be selected for the position. I do not know what then happens in Riverdale, but our recommendations are generally accepted. If applicants have applied for positions in several places, obviously we may not get our first choice. I have reasonably high standards for filling vacancies. I do not want to add someone to the team whom we do not whole-heartedly endorse. Because of the mediocre references on Dr. Wright and the very neutral reference on Dr. Westover, I chose not to make a selection from the lists that Riverdale had sent me. I turned the lists back to see if we could broaden the applicant base. It is not unusual for me to turn back a certificate for more applicants. In New York, we do not have a hot bed of interest in our positions. I don't know why, maybe the cost of living. But it is not unusual for me to check references and then decide I was not interested in the candidates and ask for the position to be re-advertised, or to have candidates not accept a position offered after investigating the cost of living.

We re-advertised the Western New York position. Dr. Westover did make the list Riverdale sent me, but he was not on the list as a veteran. I thought that was strange. I selected Dr. Brian Bohl. He had previous experience in the military and with the Department of Agriculture's Food Safety Inspection Service. I do not know if he had any prior protected EEO activity like contacting a counselor or filing a complaint about employment discrimination.

In response to specific questions from the investigator, I am providing the following information:

I knew Dr. Jan Huber, but I never discussed Dr. Westover with him.

I never knew Dr. Rube Harrington and never discussed Dr. Westover with him. I do know he retired a while ago.

I know Dr. Tom Walton, but I never discussed Dr. Westover with him.

I know Dr. Jose Diez, but I never discussed Dr. Westover with him.

I do not recall talking with Dr. Lane, my supervisor, about Dr. Westover, but I would have told him we were canceling the vacancy announcement and why. Until this complaint came up, I never discussed Dr. Westover's previous APHIS employment with anyone but Ms. Wing.

In deciding to cancel vacancy announcement number 2487-2004-0132, I did not reprise against Dr. Westover for any EEO activity he may have engaged in before applying for the Western New York veterinarian position. As I said earlier, I did not know of any EEO activity he engaged in prior to this complaint. At the end of this interview, the investigator asked me specifically if I knew Dr. Westover had filed an EEO complaint about his earlier separation from APHIS. I did

 Initials ____

not know that. The investigator also asked me if I knew that Dr. Westover had filed a court action over his earlier separation from APHIS. I did not know anything about that until the investigator asked me the question.

I have reviewed this statement, which consists of 4 pages, and hereby solemnly x swear ______ affirm that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential and may be shown to the interested parties as well as made a permanent part of the record of investigation.

Marianne C Mullaney ______ 29 Aug 05

(Signature of Deponent) (Date)

Signed before me at (Street and City) Michael D Whitten NEW KARNER RD ALBANY, NY
on this 29 day of AUGUST, 2005

Michael D Whitten

(Signature of Investigator/Witness)



Initials MCM